No objections to this Report and Recommendation (the "R&R") have been received, and accordingly I review the R&R for clear error.  Finding no error, clear or otherwise, I adopt the R&R as the decision of the Court.  The Petition is denied.  A certificate of appealability will not issue.  The Clerk of Court is respectfully directed to send a copy of this endorsement to Petitioner at the address on the docket and at Elmira Correctional Facility, 1879 Davis Street, P.O. Box 500, Elmira, NY 14901.  The Clerk is further respectfully directed to close the case.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SO ORDERED.

*Cathy Seibel*

CATHY SEIBEL, U.S.D.J.

---------------------------------------------------------------X

DONTAE DEGREE,

                                                    Petitioner,

                              -against-

JOSEPH COREY, SUPERINTENDENT,

                                                    Respondent.

---------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**            2/15/24

**21 Civ. 11012 (CS)(JCM)**

To the Honorable Cathy Seibel, United States District Judge:

Petitioner Dontae Degree ("Petitioner"), proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on December 14, 2021 (the "Petition").[1] (Docket No. 1).  The District Attorney of Westchester County, on behalf of Joseph Corey, Superintendent of the Auburn Correctional Facility ("Respondent" or the "State"), opposed the Petition on March 30, 2022. (Docket Nos. 14, 15, 16).  Petitioner filed a reply on September 19, 2023. (Docket No. 33).  For the reasons set forth below, I respectfully recommend that the Petition be denied.

## I.       BACKGROUND

### A.       The Crimes, Trial and Sentence

Petitioner's conviction in this case arises from events that took place on August 25, 2015,

---

[1] A *pro se* prisoner's papers are deemed filed at the time he or she delivers them to prison authorities for forwarding to the court clerk. *See Houston v. Lack*, 487 U.S. 266, 270 (1988); *Walker v. Jastremski*, 430 F.3d 560 (2d Cir. 2005) (analyzing the "*Houston* prison mailbox rule").  Petitioner certified that his Petition was delivered to the prison authorities for mailing on December 14, 2021. (Docket No. 1 at 15).  Consequently, and because the timeliness of the Petition is not challenged, the Court adopts Petitioner's date for this filing and all other filings discussed herein.

in Yonkers, New York.[2] (Trial Tr.[3] at 12-15[4]).  After borrowing a car from his girlfriend, Melissa Frederique, purportedly to travel to Manhattan for a job opportunity, Petitioner instead traveled to Yonkers where he searched for Kenneth Hill, an individual Petitioner knew had provided the firearm used to kill Petitioner's cousin. (*Id.* at 338-45, 536-37, 749-65).  Petitioner found Mr. Hill sitting in a parked car on the side of the road with another individual, Roylin Fairclough. (*Id.* at 928-29).  Petitioner approached the vehicle, drew a firearm from his waistband, and fired into the parked car—killing Mr. Hill and severely injuring Mr. Fairclough. (*Id.* at 329, 407-08, 502).  Petitioner then went back to Ms. Frederique's car, drove to White Plains, New York where he picked her up from work, told her that his job interview went well and he was confident he would be offered the position. (*Id.* at 750-51, 910).

Meanwhile, a plainclothes police officer, Albert Hughes, responded to the crime scene, radioed for assistance, and canvassed the area for witnesses. (*Id.* at 327-52).  Multiple witnesses told Officer Hughes that the shooter was a black male wearing dark clothes and a backpack, and that he got into a red car after fleeing the scene. (*Id.*).  Police tracked the car's license plate and discovered that it belonged to Ms. Frederique. (*Id.* at 445-50).  Shortly thereafter, police stopped the vehicle, finding Petitioner in the driver's seat and Ms. Frederique in the passenger's seat. (*Id.*).  Petitioner told police during a subsequent interrogation that he drove the car to the Bronx that day where he parked it and then got on a bus to Manhattan for a job interview. (*Id.* at 1184-86).  This story was contrary to the surveillance camera footage and cell phone records police

---

[2] The Court construes the evidence presented at trial in the light most favorable to the State. *See, e.g.*, *Murden v. Artuz*, 497 F.3d 178, 184 (2d Cir. 2007).

[3] "Trial Tr." refers to the transcript of Petitioner's trial, held from January 18, 2017 through February 8, 2017. (Docket No. 16).

[4] Unless otherwise noted, all page numbers refer to the numbers generated by the Court's electronic case filing system ("ECF").

collected, which showed that Ms. Frederique's vehicle and Petitioner's phone were in Yonkers

that day near the victim's vehicle and not in the Bronx or Manhattan, as he told the police. (*Id.* at

1080).  During their investigation, police also discovered a discarded latex glove near the

location Petitioner had parked Ms. Frederique's car in Yonkers, which matched a box of gloves

police later found in the car. (*Id.* at 361, 1159).

　　　　Petitioner was indicted on October 27, 2015, in the Supreme Court of the State of New

York, Westchester County, on charges of Murder in the Second Degree, Attempted Murder in

the Second Degree, Assault in the First Degree, and Criminal Possession of a Weapon in the

Second Degree. (Docket No. 14 at 2).  Petitioner pleaded not guilty, and the case proceeded to

trial. (Docket No. 15 at 5).  During the presentation of its case-in-chief, the State called

numerous witnesses, including Yonkers Police Officer Douglas Degree, Yonkers Police

Detective Neal Cromwell, eyewitness Jose Ferreiras, a medical examiner, and Ms. Frederique.

(Docket No. 14 at 8).  Cross-examination of each witness was contentious, as the trial court

sustained the State's objections to numerous lines of questioning.  For example, defense counsel

sought to question: (1) Officer Degree about one of the victim's gang affiliations; (2) Detective

Cromwell about whether other individuals could have borrowed Ms. Frederique's car the day of

the shooting; (3) Mr. Ferreiras regarding whether he previously identified another suspect as the

shooter; and (4) the medical examiner about the decedent victim's tattoos. (Docket No. 15 at 12).

In addition, the trial court allowed the State to ask Ms. Frederique questions about Petitioner's

criminal history after defense counsel allegedly opened the door to such character evidence by

inquiring whether Petitioner was a truthful person or had a propensity for violence. (Trial Tr. at

794-96).

　　　　Ultimately, Petitioner was convicted on February 10, 2017, on all counts in the

indictment. (*Id.* at 1368).  He then moved to set aside the verdict, arguing that one of the jurors failed to disclose during *voir dire* that she knew one of the victims in the case through her fiancé, and was godmother to their child. (Docket No. 15-1).  On July 18, 2017, the trial court denied that motion, holding that Petitioner's allegations were "hearsay supported solely by his attorney's affirmation" and that "he fail[ed] to identify the source of the allegations and the grounds for his belief" as required under New York law. (Docket No. 15-3 at 11).  The trial court then sentenced Petitioner on October 12, 2017, to a term of 25 years to life on the Murder charge, 25 years on the Attempted Murder charge, 25 years on the Assault conviction, and 15 years on the Criminal Possession of a weapon charge. (Sentencing Tr.[5] at 12).  All but the Murder and Attempted Murder sentences were to run concurrently. (*Id.* at 13).

## B.    Direct Appeal

Petitioner filed a direct appeal through counsel on February 9, 2019, arguing that: (1) the verdict was against the weight of the evidence and the State failed to prove Petitioner's guilt beyond a reasonable doubt, (Docket 15-14 at 24-31); (2) the trial court violated Petitioner's Fourteenth Amendment right to due process by giving an *Allen*[6] charge that suggested that the jury would be required to sit indefinitely until they reached a unanimous verdict, (*id.* at 32-36); (3) defense counsel was ineffective for opening the door to testimony from Ms. Frederique about Petitioner's criminal history, (*id.* at 37-45); (4) the trial court allowed improper motive testimony, (*id.* at 46-50); (5) the trial court violated Petitioner's Sixth Amendment right to present a defense and Fourteenth Amendment right to due process by refusing to allow defense

---

[5] "Sentencing Tr." refers to the transcript of Petitioner's sentencing hearing, held on October 25, 2017. (Docket No. 16-6).

[6] "*Allen* charge" refers to the landmark case *Allen v. United States*, 164 U.S. 492 (1896), in which the Supreme Court held that it was constitutional for trial judges to give dissenting jurors an instruction that they should reconsider their current position in light of the jury being deadlocked.

counsel to introduce evidence of third-party culpability, (*id.* at 51-56); (6) the trial court erred in denying Petitioner's motion to set aside the verdict, (*id.* at 57-63); and (7) the trial court violated the Sixth Amendment's Confrontation Clause by limiting the scope of defense counsel's cross-examination of four of the State's witnesses, (*id.* at 64-72).

By Decision and Order, dated August 5, 2020, the Supreme Court of New York, Appellate Division, Second Judicial Department (the "Second Department"), affirmed Petitioner's conviction in its entirely. *People v. Degree*, 128 N.Y.S.3d 631 (2d Dep't 2020). Petitioner then sought leave to appeal the Second Department's decision to the New York Court of Appeals ("Court of Appeals"), which was summarily denied on December 8, 2020. *People v. Degree*, 128 N.Y.S.3d 489 (N.Y. 2020).

## C.    The Petition

On December 14, 2021, Petitioner filed the instant Petition. (Docket No. 1 at 15). The State filed its opposition on March 30, 2022. (Docket Nos. 14, 15, 16).  On February 24, 2023, Petitioner moved to stay, hold the proceedings in abeyance, and amend the Petition to add a claim that he was pursuing in a *coram nobis* petition in the Second Department for ineffective assistance of appellate counsel. (Docket No. 25). The State opposed that motion, (Docket No. 29), and the Court denied it on June 13, 2023, holding that "the claims in the *coram nobis* petition do not relate back to the claims in the Petition" and that Petitioner had "fail[ed] to establish good cause for his delay in raising his ineffective assistance of appellate counsel claims," which were also "plainly meritless." (Docket No. 30 at 7, 10-11) (citations and internal

quotation omitted).  Petitioner then filed a reply in further support of his Petition on September 19, 2023. (Docket No. 33).

Construing the Petition broadly, *see Williams v. Kullman*, 722 F.2d 1048, 1051 (2d Cir. 1983) (holding that pleading requirements in habeas proceedings should not be "overly technical and stringent"), Petitioner argues four claims for relief: (1) that the evidence presented at trial was insufficient to support his conviction, (Docket No. 1 at 6); (2) that the State violated his Sixth Amendment right to an impartial jury and Fourteenth Amendment right to due process of law, (*id.* at 7); (3) that the trial court violated his Sixth Amendment right to confront witnesses against him, (*id.*); and (4) ineffective assistance of trial counsel, (*id.* at 10).

## II.    APPLICABLE LAW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996" ("AEDPA"). *Harrington v. Richter*, 562 U.S. 86, 97 (2011).  "Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254." *Visich v. Walsh*, No. 10 Civ. 4160 (ER) (PED), 2013 WL 3388953, at *9 (S.D.N.Y. July 3, 2013).[7]  The procedural and substantive standards are summarized below.

### A.    Exhaustion as a Procedural Bar

A habeas petition may not be granted unless the petitioner has exhausted his claims in state court. *See* 28 U.S.C. § 2254(b).  As the statute prescribes:

---

[7] If Petitioner does not have access to cases cited herein that are available only by electronic database, then he may request copies from Respondent's counsel. *See* Local Civ. R. 7.2 ("Upon request, counsel shall provide the *pro se* litigant with copies of such unpublished cases and other authorities as are cited in a decision of the Court and were not previously cited by any party.")

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

    (A) the applicant has exhausted the remedies available in the courts of the State; or

    (B)(i) there is an absence of available State corrective process; or

    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

    . . .

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)–(c).

Exhaustion requires a prisoner to have "fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts." *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (internal quotations omitted).  If a petitioner "cites to specific provisions of the U.S. Constitution in his state court brief, the petitioner has fairly presented his constitutional claim to the state court." *Davis v. Strack*, 270 F.3d 111, 122 (2d Cir. 2001); *see also Reid v. Senkowski*, 961 F.2d 374, 376 (2d Cir. 1992) (even "a minimal reference to the Fourteenth Amendment" presents a federal constitutional claim to the state courts).  A petitioner may fairly present his claim even without citing to the U.S. Constitution, by, *inter alia*: "(a) [relying] on pertinent federal cases employing constitutional analysis, (b) [relying] on state cases employing constitutional analysis in like fact situations, (c) [asserting] . . . [a] claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) [alleging] . . . a pattern of facts that is well within the mainstream of constitutional litigation." *Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982).  Fair presentation includes petitioning for discretionary review in the state's highest appellate court. *See O'Sullivan v. Boerckel*, 526

U.S. 838, 839–40 (1999) ("[A] state prisoner must present his claims to a state supreme court in a petition for discretionary review in order to satisfy the exhaustion requirement").

However, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotations omitted).  In such cases, although the claim is technically unexhausted, the district court may deem the claim to be exhausted but procedurally barred from habeas review. *See id.* at 140 ("[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 (1991)).

Under New York law, defendants are permitted only one direct appeal. *See Dasney v. People of the State of New York*, No. 15-cv-5734 (RJS), 2017 WL 253488, at *5 (S.D.N.Y. Jan. 19, 2017) (citing N.Y. Ct. App. R. § 500.20);[8] *see also Roa v. Portuondo*, 548 F. Supp. 2d 56, 78 (S.D.N.Y. 2008) ("Any attempt to raise these claims at this stage as part of a direct appeal would be rejected because a criminal defendant is entitled to only one direct appeal and one application for leave to appeal to the Court of Appeals.").  Petitioners must raise record-based claims by direct appeal rather than by a collateral motion in state court. *See, e.g.*, *O'Kane v. Kirkpatrick*, No. 09 Civ. 05167 (HB)(THK), 2011 WL 3809945, at *7 (S.D.N.Y. Feb. 15, 2011) ("[A]ll claims that are record–based must be raised in a direct appeal. . . . It is only when a defendant's claim hinges upon facts outside the trial record, that he may collaterally attack his conviction by

---

[8] This rule states, in relevant part, that a letter application for leave to appeal "shall indicate . . . (2) that no application for the same relief has been addressed to a justice of the Appellate Division, as *only one application is available*." N.Y. Ct. App. R. 500.20(a) (emphasis added).

bringing a claim under CPL § 440.10."), *report and recommendation adopted*, 2011 WL

3918158 (S.D.N.Y. Aug. 25, 2011); *Lowman v. New York*, No. 09-CV-0058T (MAT), 2011 WL

90996, at *9 (W.D.N.Y. Jan. 11, 2011) ("Collateral review of this claim—by way of another

CPL § 440 motion—is also barred because the claim is a matter of record that could have been

raised on direct appeal, but unjustifiably was not.)" (citing N.Y. Criminal Procedure Law

("C.P.L.") § 440.10(2)(c)).[9]

     To avoid the procedural default of an unexhausted claim, a petitioner may show "cause

for the default and prejudice, or that failure to consider the claim will result in miscarriage of

justice, *i.e.*, the petitioner is actually innocent." *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir.

2003).

**B.      Adequate and Independent State Grounds as a Procedural Bar**

     "It is well established that federal courts will not review questions of federal law

presented in a habeas petition when the state court's decision rests upon a state-law ground that

'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556

U.S. 449, 465 (2009) (quoting *Coleman*, 501 U.S. at 729).  This preclusion applies even if the

state court alternatively rules on the merits of the federal claim, so long as there is an adequate

and independent state ground that would bar the claim in state court. *See, e.g.*, *Harris v. Reed*,

489 U.S. 255, 264 n.10 (1989); *accord Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999).

     "A state court decision will be 'independent' when it 'fairly appears' to rest primarily on

state law." *Taylor v. Connelly*, 18 F. Supp. 3d 242, 253 (E.D.N.Y. 2014) (quoting *Jimenez v.*

---

[9] C.P.L. § 440.10(2)(c) states, in relevant part, that a court must deny a § 440.10 motion to vacate judgment when "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him. . . ."

*Walker*, 458 F.3d 130, 138 (2d Cir. 2006)).  Typically, a ground is adequate "only if it is based on a rule that is 'firmly established and regularly followed' by the state in question." *Garcia*, 188 F.3d at 77 (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)); *see also Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003) (same).  A decision that a state procedural rule is inadequate should not be made "lightly or without clear support in state law." *Garcia*, 188 F.3d at 77 (internal quotations omitted).  However, "there are 'exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question.'" *Cotto*, 331 F.3d at 240 (quoting *Lee v. Kemna*, 534 U.S. 362, 376 (2002)). In determining whether a case is "exceptional" in that the state ground should be held inadequate, the Second Circuit uses the following factors as "guideposts":

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had substantially complied with the rule given the realities of trial, and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Id.* (internal quotations omitted).

To avoid a procedural default based on independent and adequate state grounds, a petitioner must "show 'cause' for the default and 'prejudice attributable thereto,' . . . or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Harris*, 489 U.S. at 262 (quoting *Murray v. Carrier*, 477 U.S. 478, 485, 495 (1986)).

**C.    AEDPA Standard of Review**

When a federal court reaches the merits of a habeas petition, AEDPA prescribes a "highly deferential" standard for reviewing state court rulings. *Lindh v. Murphy*, 521 U.S. 320,

- 10 -

333 n.7 (1997); *see also Fischer v. Smith*, 780 F.3d 556, 561 (2d Cir. 2015).  An application for a

writ of habeas corpus:

> shall not be granted with respect to any claim that was adjudicated on the merits in
> State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable
> > application of, clearly established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination
> > of the facts in light of the evidence presented in the State court
> > proceeding.

28 U.S.C. § 2254(d)(1)–(2).

Courts have interpreted the phrase "adjudicated on the merits" in AEDPA as meaning

that a state court "(1) dispose[d] of the claim on the merits, and (2) reduce[d] its disposition to

judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) (internal quotations omitted).

Courts examine the "last reasoned decision" by the state courts in determining whether a federal

claim was adjudicated on the merits. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where

there has been one reasoned state judgment rejecting a federal claim, later unexplained orders

upholding that judgment or rejecting the same claim rest upon the same ground.").

If a state court adjudicates a federal claim on the merits, the Court must apply AEDPA

deference to that state court ruling.[10] 28 U.S.C. § 2254(d)(1)–(2).  In the context of AEDPA

deference, the phrase "clearly established Federal law" means "the holdings, as opposed to the

dicta, of [the Supreme Court of the United States'] decisions as of the time of the relevant state–

court decision." *Williams v. Taylor*, 529 U.S. 362, 365 (2000).  "A state court decision is

---

[10] If, by contrast, a state court does not adjudicate a federal claim on the merits, "AEDPA deference is not required .
. . [and] conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo." *DeBerry v.
Portuondo*, 403 F.3d 57, 66–67 (2d Cir. 2005).

contrary to such clearly established federal law if it 'applies a rule that contradicts the governing law set forth in the Supreme Court's cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from its precedent.'" *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015) (quoting *Boyette v. Lefevre*, 246 F.3d 76, 90 (2d Cir. 2001)).  A state court decision involves an "unreasonable application" of Supreme Court precedent if: (1) "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.

For a federal court to find a state court's application of Supreme Court precedent unreasonable, the state court's decision must have been more than "incorrect or erroneous" — it must have been "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  In other words, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of [the state court's] decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004)).  However, "the trial court's decision need not teeter on 'judicial incompetence' to warrant relief under § 2254(d)." *Alvarez v. Ercole*, 763 F.3d 223, 229 (2d Cir. 2014) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).  If a state court decision does not contain reasons for the dismissal of a defendant's federal claim, the Court must "consider 'what arguments or theories . . . could have supported[] the state court's decision,' and may grant habeas only if 'fairminded jurists could [not] disagree that those arguments or theories are inconsistent with the

holding in a prior decision of the Supreme Court." *Lynch v. Superintendent Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (alterations in original) (quoting *Richter*, 562 U.S. at 102).

When reviewing an application for a writ of habeas corpus, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting the state court's factual holding by "clear and convincing evidence." *Id.*; *see also Chapman v. Vanzandt*, No. 96 CIV. 6940 (JGK), 1997 WL 375668, at *4 (S.D.N.Y. July 8, 1997).

## III.    DISCUSSION

### A.    Sufficiency of the Evidence

Petitioner's first argument is that the evidence presented at trial was insufficient to support the jury's guilty verdict and therefore violated his Sixth and Fourteenth Amendment rights.  In support of this claim, Petitioner contends that the State presented no direct evidence of his guilt and instead relied solely on circumstantial evidence. (Docket No. 1 at 6).  Specifically, Petitioner asserts that, "[t]here were no eyewitnesses, no gun nor ammunition recovered, no shell casings, no DNA evidence, no fingerprints, no mask or backpack" and that an eyewitness's description of the shooter bore no resemblance to him. (Docket No. 33 at 4).  In response, the State argues: (1) that this claim is barred from federal habeas review since the Second Department denied it on independent and adequate state procedural law; and (2) that even if it was reviewable, "the circumstantial evidence of petitioner's guilt at trial was manifest" and "legally sufficient to prove petitioner's guilt." (Docket No. 15 at 11-12).

First, the Second Department's denial of Petitioner's sufficiency of the evidence claim on procedural grounds is a ruling based on independent and adequate state law foreclosing federal habeas relief.  "[A] state court procedural default will bar habeas review when the last state court

- 13 -

rendering judgment in the case clearly and expressly states that its judgment rests on a state

procedural bar . . . even where the state court has also ruled in the alternative on the merits of the

federal claim." *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) (internal quotations omitted);

*see also Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810 n.4 (2d Cir. 2000) ("We note that

we have held that where a state court says that a claim is 'not preserved for appellate review' and

then ruled 'in any event' on the merits, such a claim is not preserved") (quoting *Glenn v. Bartlett*,

98 F.3d 721, 724-25 (2d Cir. 1996)).  The Second Department held that Petitioner's claim was

"unpreserved for appellate review" because he failed to state with specificity in his post-trial

motion to vacate that he was asserting a claim for insufficient evidence. *Degree*, 128 N.Y.S.3d at

633.  In New York, "[t]o preserve for [] review a challenge to the legal sufficiency of a

conviction, a defendant must move for a trial order of dismissal, and the argument must be

specifically directed at the error being urged."  *See People v. Hawkins*, 872 N.Y.S.2d 395, 399

(N.Y. 2008).

   Here, at the conclusion of the State's case-in-chief, defense counsel made an "oral motion

. . . for a trial order of dismissal" arguing that "the People" had not met their burden and the case

was "entirely circumstantial." (Trial Tr. at 1225).  This is the exact type of generalized motion

that New York courts deem inadequate to preserve a claim of insufficient evidence. *See

Calderon v. Perez*, No. 10 Civ. 2562 (GBD)(AJP), 2011 WL 293709, at *24 (S.D.N.Y. Jan. 28,

2011) (collecting cases), *report and recommendation adopted*, 2011 WL 1405029 (S.D.N.Y.

Apr. 5, 2011).  Therefore, the Second Department's denial of this claim is based on independent

and adequate state procedural law and federal habeas relief is barred unless Petitioner can

"demonstrate cause for the default and actual prejudice as a result of the alleged violation of

federal law" or that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Petitioner has failed to establish either element to overcome the procedural bar to his sufficiency of the evidence claim.  To show cause for failing to preserve a claim, Petitioner must show some "external impediment preventing counsel from constructing or raising the claim, such as (1) a showing that the defendant was represented by counsel who was constitutionally ineffective; (2) a showing that the factual or legal basis for a claim was not reasonably available at the time of default; or (3) interference by state officials that made compliance with the procedural mechanism impracticable." *DeJesus v. Senkowski*, No. 00 Civ. 7926 (RJH)(THK), 2006 WL 2707330, at *9 (S.D.N.Y. Sept. 20, 2006) (citations and internal quotations omitted). Petitioner's only attempt to show cause is arguing, for the first time in the Petition, that trial counsel failed to "ensure that the trial order of dismissal motion was fully developed on the record." (Docket No. 33 at 3).  While ineffective assistance of trial counsel may support finding cause for a procedural default, and Petitioner does assert an ineffective assistance of counsel claim in the Petition, his argument in support of that claim is defense counsel's improper cross-examination of a witness, not failure to properly move for a dismissal. *See infra* Section III.C. Because Petitioner never pursued such a claim on appeal, he may not do so now as a basis for establishing cause for failing to preserve his sufficiency of the evidence claim. *DeJesus*, 2006 WL 2707330, at *9 ("Because the claim of ineffective assistance of trial counsel has not been exhausted, it cannot serve as cause for the default.").

Since Petitioner has failed to show cause for his default, the Court need not analyze whether he would be prejudiced by the Court's refusal to consider the claim. *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 127 (2d Cir. 1995) ("Since [petitioner] has failed to show cause,

there is no need to address the prejudice requirement, and federal habeas review . . . is unavailable"); *Frazier v. United States*, Nos. 19-CV-8738 (CS), 17-CR-364-7 (CS), 2021 WL 111638, at *3 n.6 (S.D.N.Y. Jan. 12, 2021) ("[a]s there is no showing of cause, I need not address prejudice").  Similarly, Petitioner has failed to demonstrate actual innocence or that application of the procedural default would result in a fundamental miscarriage of justice.  This is a "heavy burden" that only applies in "extraordinary cases," requiring presentation of new evidence establishing, by a preponderance of the evidence, that no reasonable juror would have found the petitioner guilty under the circumstances. *Calderon*, 2011 WL 293709, at *21 (citations and internal quotations omitted).

Petitioner presents no new evidence of innocence in the Petition and merely claims that "the fundamental miscarriage of justice exception is applicable" because "the state's proof was de minimis" and based entirely on circumstantial evidence. (Docket No. 33 at 3-4).  However, there is no requirement in New York that the State present direct evidence of guilt to sustain a conviction—the State may satisfy its burden solely using circumstantial evidence of guilt. *See, e.g.*, *People v. Reed*, 983 N.Y.S.2d 752, 755 (N.Y. 2014) (affirming that a conviction may be based entirely on circumstantial evidence as long as the jury "exclude[d] to a moral certainty every other reasonable hypothesis.")  Where "a jury could rationally have excluded innocent explanations of the evidence offered by the defendant and found each element of the crime proved beyond a reasonable doubt," the court must uphold the conviction since it is not an appellate court's job "to determine whether it would have reached the same conclusion as the jury with respect to a proposed innocent explanation of the [circumstantial] evidence." *Id.*  Thus, the premise of Petitioner's argument in favor of applying the miscarriage of justice exception to the procedural bar is erroneous and fails as a matter of law.

Second, even if Petitioner had properly raised his insufficient evidence claim to the trial court before presenting it on appeal and in the Petition, it would still be denied as substantively meritless.  In evaluating a sufficiency of the evidence claim under AEDPA,[11] the Court must give deference to the jury's factual determinations and may not substitute its own judgment for that of the jurors. *See Santone v. Fischer*, 689 F.3d 138, 155 (2d Cir. 2012).  To prevail on an insufficiency of the evidence claim, Petitioner must prove that "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Einaugler v. Sup. Ct. of N.Y.*, 109 F.3d 836, 839 (2d Cir. 1997) (internal quotation omitted).  This requires the Court to determine, "whether, as a matter of federal law, there was sufficient evidence for a jury to find that the prosecution proved the substantive elements of the crime as defined by state law," *id.*, while "viewing the evidence in the light most favorable to the prosecution," *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "Under this rigorous standard, the habeas court faced with a record of historical facts that supports conflicting inferences must presume, even if it does not affirmatively appear in the record, that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Willson v. Berbary*, 421 F. Supp. 2d 589, 597 (W.D.N.Y. 2006) (internal quotations omitted).  Where "the state court ha[s] already rejected Petitioner's claim of insufficient evidence on the merits" the Court must apply a "doubly deferential standard of review." *Crawford v. Capra*, 20 Civ. 8574 (KPF)(SDA), 2022 WL 1026689, at *6 (S.D.N.Y. Apr. 5, 2022).

Here, the State presented sufficient evidence to sustain Petitioner's conviction.  To be convicted of Murder in the Second Degree in New York, the State must prove that "[w]ith intent

---

[11] Since the Second Department considered this claim on the merits, even though it was unpreserved, the court's decision is entitled to AEDPA deference. *See Degree*, 128 N.Y.S.3d at 633 ("we find that the evidence was legally sufficient to establish the defendant's guilt beyond a reasonable doubt.  Moreover . . . we are satisfied that the verdict of guilt was not against the weight of the evidence.").

to cause the death of another person," Petitioner "cause[d] the death of such person." N.Y. Penal Law § 125.25. Proving Attempted Murder in the Second Degree requires showing that "with intent to commit [murder]," Petitioner "engage[d] in such conduct which tends to effect the commission of such crime." *Id.* at § 110.00. Assault in the First Degree requires the State to prove that, "[w]ith intent to cause serious physical injury to another person," Petitioner "cause[d] such injury to such person . . . by means of a deadly weapon." *Id.* at 120.10. And, finally, to prove Criminal Possession of a Weapon in the Second Degree, the State must prove that Petitioner "possesse[d] a loaded firearm" with "intent to use the same unlawfully against another." *Id.* at § 265.03. When "viewing the evidence in the light most favorable to the prosecution," it is clear there was sufficient evidence to support Petitioner's conviction. *Jackson*, 443 U.S. at 319.

The State presented substantial evidence of Petitioner's guilt, including: (1) eyewitness testimony that Petitioner's girlfriend's car, which she testified he was using that day, was seen at the scene of the shooting, (Trial Tr. at 393-96, 407-17, 773, 790-93); (2) surveillance footage showing the driver of that car approaching the victims' car and firing directly at its occupants, (*id.* at 330-38, 936-45, 959-60, 989-94); (3) geolocation data from Petitioner's phone showing he was in the vicinity of where the shooting occurred at the time it occurred, (*id.* at 1054-80, 1099); (4) testimony indicating that Petitioner lied to the police about his whereabouts at the time of the crime, (*id.* at 765-70, 1080, 1154); and (5) physical evidence (a latex glove) left at the scene of the crime that matched latex gloves found in the car, (*id.* at 581-88,701-16. Furthermore, the State also presented testimony indicating that Petitioner had motive to commit the crime, as the deceased victim had provided the firearm used to kill his cousin. (*Id.* at 536-45). Taken together,

this evidence is sufficient to support Petitioner's conviction.  Accordingly, I respectfully recommend denying Petitioner's sufficiency of the evidence claim.

**B.      Alleged Juror Misconduct**

Petitioner's second claim is that the trial court violated his right to due process of law and to an impartial jury under the Sixth and Fourteenth Amendments by denying his post-trial motion to set aside the jury's verdict because of an allegedly biased juror.  Petitioner argues that juror #3's fiancé was "the godmother of the decedent['s]" son in the case, (Docket No. 1 at 7), and therefore the trial court should have held an evidentiary hearing to probe her potential bias and then vacated his conviction, (Docket No. 33 at 6).  The State responds that the trial court's denial of Petitioner's motion was not contrary to nor an unreasonable application of Supreme Court precedent since: (1) he failed to submit "affidavits or other evidence to support his claim;" (2) he "admitted that this issue came to light nine days before the verdict was rendered," but he did not raise it then; and (3) both juror #3 and her fiancé "attested to the fact that [juror #3] had no relationship with [the deceased victim] or his family, had no knowledge about [the deceased victim's murder] before trial, did not lie or omit anything when questioned during jury selection, and deliberated entirely on the evidence at trial." (Docket No. 15 at 16-17).

As a threshold matter, the Second Department considered and rejected Petitioner's juror bias claim on the merits. *See Degree*, 128 N.Y.S.3d at 634 (affirming that the claim was "without merit" because Petitioner's "moving papers did not contain sworn allegations of the essential facts supporting the motion" and instead "was supported by the hearsay allegations of defense counsel.")  Therefore, the decision is entitled to AEDPA deference, which "stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state court" but only allows a writ to be issued "where there is no possibility fairminded jurists could

disagree that the state court's decision conflicts with this Court's precedents." *Id.* at 102. Here, Petitioner learned of juror #3's potential bias during closing arguments, but failed to alert the trial court or otherwise move for a mistrial before deliberations began. (Docket No. 15-3 at 12) ("[A]s to defendant's allegations that his aunt was present in the court room during summations and recognized [juror #3] on the jury, this allegation is clearly capable of being raised prior to the issuance of the jury verdict, yet defendant failed to do so"). Under New York law, this alone would have been sufficient grounds for denial of his claim. *See People v. Owens*, 595 N.Y.S.2d 518, 519 (2d Dep't 1993) ("To object successfully to a juror's misconduct after a verdict, a defendant is required to demonstrate that the objectionable conduct was not known to him before the verdict, and that it would not have been disclosed by a proper inquiry before the jury was sworn.").

However, Petitioner also failed to substantiate his claims through sworn testimony in his post-trial motion. Instead he relied solely on statements from his attorney that juror #3: (1) was "employed at . . . the same facility where the victims in this case were transported;"[12] (2) was engaged to "a very close friend of Kenneth Hill [] the victim of the case" who was also "god-mother of his namesake son;" (3) appeared in a picture collage her fiancé created and posted on social media, which included both juror #3 and the decedent's victim's son; (4) attended the decedent's victim's funeral with her fiancé; (5) "liked" a photo her fiancé posted on Instagram commemorating the decedent's death; and (6) was friends with Petitioner's aunt. (Docket No. 15-1 at 6-10). In response, both juror #3 and her fiancé submitted affidavits contesting all of these allegations. Juror #3 averred that: (1) she did not know the decedent victim and "had no connection to his family;" (2) did not know the Petitioner, and only later learned that his aunt

---

[12] This fact was actually revealed prior to trial during *voir dire*, when the juror "stated that she did not and does not have access to any" information about the case as a result of her employment at the hospital. (Docket No. 15-1 at 6).

"worked at a day care facility that [juror #3's] nephew attended a few years back;" (3) had no

relationship with the decedent's son's mother, who was allegedly friends with juror #3's fiancé;

(4) was not aware that her fiancé was "godmother to anyone;" (5) never attended the decedent's

funeral and did not "even know when he died;" and (6) never "liked" any photos from the

decedent's funeral. (Docket No. 15-3 at 7-9).  Similarly, juror #3's fiancé swore that juror #3

"did not attend [the decedent victim's] funeral" and did not know him. (*Id.* at 10).  While she

acknowledged her relationship with the decedent's paramour and son, she claimed that he did not

"like her . . . [and] was never around since he was always in jail." (*Id.*).  The trial court credited

these statements in denying Petitioner's motion because neither Petitioner nor his family

submitted their own sworn statements and the motion "fail[ed] to identify the source of the

allegations and the grounds for his belief, as required by the statute." (*Id.* at 11).

        The Supreme Court "has long held that the remedy for allegations of juror partiality is a

hearing in which the defendant has the opportunity to prove actual bias." *Smith v. Phillips*, 455

U.S. 209, 215 (1982).  However, "due process does not require a new trial every time a juror has

been placed in a potentially compromising situation," and "it is virtually impossible to shield

jurors from every contact or influence that might theoretically affect their vote." *Id.* at 217.

Indeed, when evaluating juror bias claims trial courts "should be[] hesitant to haul jurors in [for a

hearing] after they have reached a verdict in order to probe for potential instances of bias,

misconduct or extraneous influences." *United States v. Sun Myung Moon*, 718 F.2d 1210, 1234

(2d Cir. 1983) (citations and internal quotations omitted).  Post-trial evidentiary hearings are

only required "where there is clear, strong, substantial and incontrovertible evidence that a

specific, nonspeculative impropriety has occurred which could have prejudiced the trial." *United

States v. Guzman Loera*, No. 09-CR-0466 (BMC), 2019 WL 2869081, at *6 (E.D.N.Y. July 3,

2019) (internal quotations omitted), *aff'd*, 24 F.4th 144 (2d Cir. 2022).  "Allegations of impropriety must be 'concrete allegations of inappropriate conduct that constitute competent and relevant evidence,' though they need not be 'irrebuttable [because] if the allegations were conclusive, there would be no need for a hearing.'" *United States v. Baker*, 899 F.3d 123, 130 (2d Cir. 2018) (quoting *United States v. Ianniello*, 866 F.2d 540, 543 (2d Cir. 1989)).  Moreover, the trial judge is "accorded broad discretion" in resolving "charges of jury misconduct." *United States v. Sattar*, 395 F. Supp. 2d 66, 73 (S.D.N.Y. 2005), *aff'd sub nom. United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009).

In filing his post-trial motion to vacate the jury's verdict, Petitioner failed to submit sworn testimony corroborating his allegations against juror #3 or specifying "when the alleged incident(s) occurred so as to enable a determination as to whether [Petitioner] was in possession of the alleged information prior to when the verdict was rendered." (Docket No. 15-3).  Since post-trial evidentiary hearings are "not held to afford a convicted defendant the opportunity to conduct a fishing expedition," *Guzman Loera*, 2019 WL 2869081, at *6 (internal quotations omitted), and Petitioner failed to substantiate his allegations of bias, the trial court's decision to deny his motion to vacate the jury's verdict was not contrary to, nor an unreasonable application of, federal law. *See Smith*, 455 U.S. at 218 (holding that in federal habeas cases the trial judge's findings "are presumptively correct under 28 U.S.C. § 2254(d)").

Accordingly, I conclude and respectfully recommend denying Petitioner's claim that his Sixth and Fourteenth Amendment rights were violated by the inclusion of an allegedly biased juror at trial.

**C.       Limitation of Defendant's Cross-Examination of Four Witnesses**

Petitioner claims that the trial court violated the Confrontation Clause of the Sixth

Amendment by limiting his cross-examination of four witnesses at trial.  He argues that the trial

court improperly prohibited him from questioning: (1) Yonkers Police Officer Douglas Degree

"in regards to whether or not [he] was aware of [the decedent victim] being gang affiliated;" (2)

eyewitness Jose Ferreiras ("Eyewitness Ferreiras") regarding whether he identified another

individual as the perpetrator prior to trial; (3) Yonkers Detective Neal Cromwell on "whether he

knew if any one [sic] had borrowed" Ms. Frederique's car on the date of the shooting; and (4) the

medical examiner on whether the decedent had certain tattoos on his body. (Docket No. 33 at 9-

10).  In response, the State contends that the Second Department's rejection of this claim on

procedural grounds was a ruling based on independent and adequate state law barring habeas

review, but that even if the Court reaches the merits, it should still be denied. (Docket No. 15 at

19).

First, the State is correct that the Second Department's rejection of Petitioner's

Confrontation Clause claim on procedural grounds was a ruling based on independent and

adequate state law barring habeas review. *See supra* Section III.A.  New York allows trial courts

to "exclude from cross-examination any matter whose probative value is substantially

outweighed by the danger that it will unfairly prejudice the other side or mislead the jury."

*People v. Norcott*, 787 N.Y.S.2d 241, 248 (1st Dep't 2004) (citations and internal quotations

omitted), *aff'd sub nom. People v. Corby*, 811 N.Y.S.2d 613 (N.Y. 2005).  To preserve a line of

questioning for appeal that was limited by the trial court, based on an alleged Confrontation

Clause violation, counsel must explicitly note an exception to the trial court's ruling and must

frame the issue in constitutional terms to the trial court. *See, e.g.*, *People v. Bruno*, 975 N.Y.S.2d

22, 26 (1st Dep't 2013).  When a defendant does "not assert a constitutional right to make []

excluded inquiries, he preserve[s] at most, a state evidentiary issue, and [the] constitutional

argument is unpreserved." *People v. Milan*, 844 N.Y.S.2d 268, 269 (1st Dep't 2007) (citing

*People v. Angelo*, 644 N.Y.S.2d 460, 461 (N.Y. 1996) ("[b]ecause defendant failed to present

[his] constitutional claims to [the trial court] . . . they are unpreserved for this Court's review.")).

Here, when the State objected to defense counsel's questions to Officer Degree, Eyewitness

Ferreiras, Detective Cromwell and the medical examiner, defense counsel did not argue that the

questions were constitutionally permissible under the Confrontation Clause. (Trial Tr. at 847-48,

895-96, 1015-16, 1198-99).  Therefore, the Second Department ruled that the claim was

"unpreserved for appellate review." *Degree*, 128 N.Y.S.3d at 633.  Since this ruling was based

on independent and adequate state law, it is not cognizable on habeas review.

Second, assuming, *arguendo*, that Petitioner had properly preserved his Confrontation

Clause claim for review, it would still be denied.  The Second Department ruled that, despite

Petitioner's failure to preserve the claim for appellate review, it was "without merit" in any event

since "the trial court has broad discretion to limit cross-examination when questions are

repetitive, irrelevant or only marginally relevant, concern collateral issues, or threaten to

mislead" and here "the court providently exercised its discretion in sustaining objections to

certain questions on cross-examination that sought to elicit irrelevant, speculative, or misleading

evidence." *Degree*, 128 N.Y.S.3d at 633.  As a ruling on the merits, the Second Department's

decision is entitled to AEDPA deference. *See supra* Section II.C.  Therefore, to prevail,

Petitioner must prove that the Second Department's ruling was contrary to, or an unreasonable

application of, federal law or involved an unreasonable determination of the facts in light of the evidence presented. *Id.*  Petitioner has not established either here.

"The Sixth Amendment to the United States Constitution guarantees a criminal defendant 'the right . . . to be confronted with the witnesses against him.'" *DeJesus v. Perez*, 813 F. App'x 631, 633 (2d Cir. 2020) (quoting U.S. CONST. amend. VI).  "The main and essential purpose of confrontation is to secure for the opponent the *opportunity* of cross examination." *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974) (quoting 5 J. Wigmore, Evidence § 1395 (3d ed. 1940) (emphasis in original)).  However, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *accord Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) ("the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish") (emphasis in original).  Here, the trial court properly limited Petitioner's cross-examination where the questions posed were only marginally relevant and were likely to confuse the issues.  The problematic questions were as follows:

- <u>Officer Degree</u>: defense counsel asked whether he knew that the deceased victim was "a gang member?"  The State objected and the trial court sustained the objection holding that it did not "see the relevance" of the question. (Trial Tr. at 895-96).

- <u>Eyewitness Ferreiras</u>: defense counsel asked, "[w]hen you went into the police car to go identify this other guy a few blocks away, didn't you tell the detective like hey,

this isn't the guy? I saw the guy get into a car?"  The State objected and the trial court sustained the objection. (*Id.* at 1015-16).

- Detective Cromwell: defense counsel asked, "if someone had borrowed [Petitioner's] vehicle, that would be consistent with those photographs, correct?"  The State objected and the trial court sustained the objection, holding that the question "[c]alls for speculation" and "is for summation." (*Id.* 1198-99).

- Medical Examiner: defense counsel asked if he had discovered tattoos on the decedent victim and whether one was "don't cross."  The State objected on relevance grounds and the trial court sustained the objection. (*Id.* at 847-48).

In each circumstance, the trial court sustained objections to avoid confusing the jury with speculative questions, or questions that did not bear on Petitioner's guilt.  Since imposing reasonable limits on cross-examination does not violate the Confrontation Clause, the trial court's ruling was not contrary to, nor an unreasonable application of, federal law. *See Martin v. Ercole*, No. 07 Civ. 7171 (KMK)(LMS), 2010 WL 8970852, at *9 (S.D.N.Y. June 18, 2010) ("Limitations on cross-examination which are raised in habeas petitions have been found not to violate the Confrontation Clause where the statements intended to be elicited were neither probative nor relevant, . . . and where cross-examination would have probed matters deemed collateral") (collecting cases), *report and recommendation adopted*, 2012 WL 4465854 (S.D.N.Y. Sept. 27, 2012).

Accordingly, I conclude and respectfully recommend that Petitioner's Confrontation Clause claim should be denied.

**D.      Ineffective Assistance of Trial Counsel**

Petitioner's final claim is that he was denied effective assistance of trial counsel under the

Due Process Clause of the Sixth Amendment.  He claims that defense counsel was ineffective by

questioning Ms. Frederique about Petitioner's character and, thus, "open[ing] the door

concerning [his] credibility," which led the State to elicit that he "was on parole for criminal sale

of a firearm and had been convicted of assault on a corrections officer while incarcerated."

(Docket No. 33 at 14).  Petitioner claims that if defense counsel had not pursued this line of

questioning, then he would have been acquitted since "even with this highly prejudicial

information brought out at trial, the jury was deadlocked six-to-six five hours into deliberations."

(*Id.* at 15).  The State responds that defense counsel made a strategic decision to question Ms.

Frederique about Petitioner's character, which aligned with a theme defense counsel urged

throughout trial: that there was no direct evidence of Petitioner's guilt, and that Petitioner had a

"calm" temperament inconsistent with that of a violent offender. (Docket No. 15 at 19-21).

"Ineffective assistance claims are evaluated under the framework provided in *Strickland*

*v. Washington*, 466 U.S. 668 (1984)." *Reynart v. Griffin*, 11-CV-0748 (PKC), 2017 WL

6626247, at *9 (E.D.N.Y. Oct. 9, 2017).  There are two elements of an ineffective assistance of

counsel claim under *Strickland*.  First, a successful ineffective assistance claim requires a

showing that "counsel's representation fell below an objective standard of reasonableness," and

second, it requires that "there [be] a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 687-

96.  With respect to the first element, a petitioner must show that "counsel's performance was

deficient," considering "the reasonableness of counsel's actions under all circumstances, [and]

keeping in mind that a 'fair assessment of attorney performance requires that every effort be

made to eliminate the distorting effects of hindsight.'" *Swanton v. Graham*, No. 07-CV-4113 (JFB), 2009 WL 1406969, at \*10 (E.D.N.Y. May 19, 2009) (quoting *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005)).

In evaluating this prong, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *See Strickland*, 466 U.S. at 689. The second element "focuses on prejudice to the defendant." *Swanton*, 2009 WL 1406969, at \*10. *Strickland's* "reasonable probability" standard for this element entails errors serious enough to "undermine confidence in the outcome." 466 U.S. at 694. Since "there are countless ways to provide effective assistance in any given case and . . . even the best criminal defense attorneys would not defend a particular client in the same way[,] . . . reasonable, but unsuccessful strategic choices cannot provide the basis for ineffective assistance of counsel." *Speringo v. McLaughlin*, 202 F. Supp. 2d 178, 190–91 (S.D.N.Y. 2002). "A court need not decide both prongs of the *Strickland* test for ineffective assistance of counsel if a party has made an insufficient showing on one." *McCollough v. Bennett*, No. 02-cv-5230, 2010 WL 114253, at \*8 (E.D.N.Y. Jan. 12, 2010).

At the outset, the Court notes that this claim was reviewed on the merits by the Second Department and is thus entitled to AEDPA deference. The Second Department held that "[c]ontrary to the defendant's contention, he received meaningful representation of trial counsel." *Degree*, 128 N.Y.S.3d at 634 (citations and internal quotations omitted). The Supreme Court has emphasized that when a habeas petitioner brings a claim for ineffective assistance of counsel, AEDPA review is "doubly deferential," and gives "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). Here, Petitioner cannot establish either prong under *Strickland* and its progeny.

First, defense counsel's decision to question Ms. Frederique about Petitioner's propensity (or lack thereof) for violence was reasonable under the circumstances.  Petitioner was charged with numerous violent crimes and the State presented substantial circumstantial evidence of his guilt, including testimony from Ms. Frederique that she lent him the car that was spotted near the crime scene. (Trial Tr. at 749-68, 773, 790-92).  Petitioner's defense was that he was not using the car at the time.  Therefore, to buttress this narrative, defense counsel chose to question Ms. Frederique about Petitioner's character for truthfulness and propensity for violence, hoping that it would substantiate his defense and raise a question in the jury's mind over whether he was capable of committing the crime. (*Id.* at 794-96).  The fact that it did not work is not evidence of ineffective assistance of counsel. *Totesau v. Lee*, No. 19-CV-6992 (PKC), 2022 WL 1666895, at *26 (E.D.N.Y. May 25, 2022) ("When an attorney reasonably opts to present a defense centered on the theory that another person—not the attorney's client—committed the crime, that attorney does not render ineffective assistance merely because the defense was unsuccessful"), *aff'd*, 2023 WL 8253683 (2d Cir. Nov. 29, 2023).  Moreover, contrary to Petitioner's argument, opening the door to damaging testimony in pursuit of a reasonable defense is not evidence of ineffective assistance of counsel. *See Cuevas v. Henderson*, 801 F.2d 586, 590 (2d Cir. 1986) (affirming denial of habeas petitioner's argument that counsel was ineffective for opening the door to damaging testimony that "hurt rather than helped [petitioner's] case" where the "line of questioning was a matter of strategy"); *see also Basciano v. United States*, No. 12-CV-280 (NGG), 2014 WL 12978824, at *12 n.26 (E.D.N.Y. Dec. 17, 2014) ("a strategic line of questioning cannot be the basis for a finding of ineffective assistance of counsel, even if it opened the door to the admission of other acts.").

Second, even if defense counsel's conduct was deficient, Petitioner has failed to establish that he was prejudiced as a result.  It is well-established that "[t]he prejudice inquiry is [] ineluctably tied to the strength of the prosecution's evidence." *Garner v. Lee*, 908 F.3d 845, 862 (2d Cir. 2018) "Even serious errors by counsel do not warrant granting habeas relief where the conviction is supported by overwhelming evidence of guilt." *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001).  As discussed, the State presented substantial evidence of Petitioner's guilt, including: (1) eyewitness testimony that Petitioner's girlfriend's car, which he was using, was seen at the scene of the shooting, (Trial Tr. at 393-96, 407-17, 773, 790-93); (2) surveillance footage showing the driver of that car approaching the victims' car and firing directly at its occupants, (*id.* at 330-38, 936-45, 959-60, 989-94); (3) geolocation data from Petitioner's phone showing he was at the scene of the crime when the shooting took place, (*id.* at 1054-80, 1099, 1204); (4) testimony indicating that Petitioner lied to the police about his whereabouts at the time of the crime, (*id.* at 765-70, 1080, 1154); and (5) physical evidence (a latex glove) left at the scene of the crime that matched gloves found in the car, (*id.* at 581-88,701-16).  Therefore, since Petitioner has "failed to show that, but for Trial counsel's allegedly ineffective cross-examinations, the outcome of the proceedings would have been different[,]" he has also failed to satisfy the second prong of *Strickland*. *United States v. Wilson*, 146 F. Supp. 3d 472, 483 (E.D.N.Y. 2015).

Accordingly, I conclude and respectfully recommend denying Petitioner's claim that he was denied effective assistance of trial counsel due to defense counsel's strategic decision to seek character testimony from a witness, leading to the introduction of Petitioner's prior crimes.

## IV.   CONCLUSION

For the foregoing reasons, I conclude and respectfully recommend that the Petition be denied.  Further, because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

The Clerk of Court is requested to mail a copy of this Report and Recommendation to the *pro se* Petitioner at the address listed on the docket, as well as to Elmira Correctional Facility, 1879 Davis Street, P.O. Box 500, Elmira, New York 14901, which is the facility that the New York State Department of Corrections and Community Supervision lists as his current residence.[13]

## V.   NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts, the parties shall have fourteen (14) days from the receipt of this Report and Recommendation to serve and file written objections.  If copies of this Report and Recommendation are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of the same to file and serve written objections. *See* Fed. R. Civ. P. 6(d).  Objections and responses to objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Cathy Seibel at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

---

[13] Incarcerated Lookup, *New York State Department of Corrections and Community Supervision*, https://nysdoccslookup.doccs.ny.gov/ (last visited January 19, 2024).

- 31 -

Requests for extensions of time to file objections must be made to the Honorable Cathy Seibel and not to the undersigned.  Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be rendered. *See* 28 U.S.C. § 636(b)(1); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

Dated:  January 19, 2024
White Plains, New York

RESPECTFULLY SUBMITTED,

_____
JUDITH C. McCARTHY
United States Magistrate Judge